[No. B202299. Second Dist., Div. Four. May 1, 2008.]

In re LESLY G., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
OLGA G., Defendant and Appellant.

## COUNSEL

Nancy O. Flores, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, County Counsel, James M. Owens, Assistant County Counsel, and O. Raquel Ramirez, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

MANELLA, J.—Olga G. appeals from the denial of her petition for modification and the juvenile court's order terminating parental rights under Welfare and Institutions Code section 366.26.[1] We reverse on the ground that the court failed to hold the required hearing on appellant's petition for modification, and remand for further hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Jurisdictional Findings

The family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in March 2005, when DCFS received reports of general neglect and physical abuse of appellant's five children: Lesly, Jennifer, Isaac, Josue, and Martin, Jr.[2] DCFS could not confirm physical abuse or neglect, but the caseworker learned that appellant had recently accused the children's father, Martin G., of spousal abuse.[3]

Initially, the parties agreed to participate in family preservation services. Within a month, however, DCFS received multiple reports that appellant had left the children unsupervised. In addition, several family members reported their suspicion that appellant was using drugs, and appellant reported another incident of physical abuse by Martin. At DCFS's request, appellant underwent a drug test, which was positive for amphetamine and methamphetamine. The children were detained in May 2005.

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] At the time, Lesly was eight, Jennifer was four, Isaac and Josue were two, and Martin, Jr., was one.

[3] Further references to "Martin" are to the children's father. The minor will be referred to as "Martin, Jr." Martin is not a party to this appeal.

Appellant and Martin waived contest to the jurisdictional petition. The court sustained the petition, finding jurisdiction based on the parents' history of engaging in violent altercations and lack of supervision of the children, and on appellant's substance abuse. The court ordered the following reunification services for appellant: (1) a drug rehabilitation program with random testing; (2) domestic violence counseling; (3) parent education; and (4) individual counseling to address substance abuse, domestic violence, and "case issues."[4] Appellant was given appropriate referrals. After a brief period in foster care, the children were placed in the home of their maternal grandmother, Maria M.

### B. *Reunification Period*

At the time of the six-month review hearing in November 2005, the caseworker reported that appellant had not commenced any of the court-ordered programs and had stopped visiting the children in September. By the 12-month hearing in May 2006, appellant had made a partial attempt at compliance by completing 68 hours of parenting classes, enrolling in a drug treatment program from which she was discharged after two months, and undergoing one drug test. She had also resumed weekly monitored visitation.

By the time of the 18-month review hearing in October 2006, appellant had made additional progress, but was in only partial compliance. Beginning in June 2006, she had attended six individual counseling sessions and 10 group therapy sessions for victims of domestic violence. In May 2006, she began a second drug treatment program and was considered "in compliance, barely" due to missing several sessions. She had tested negative for drugs on four occasions, but had missed eight tests. In addition, the caseworker reported that appellant and Martin had engaged in verbal altercations "over the phone, in the children's presence," Martin had assaulted both appellant and a male visitor, and Martin had asked Lesly to report on whether appellant was seeing other men. DCFS recommended termination of reunification services for both parents.

At the contested hearing on January 17, 2007, the court ordered reunification services terminated and set a section 366.26 permanent plan hearing for May 16, 2007.[5] When that date arrived, the court put the section 366.26 hearing over to July 18 for a contest.

---

[4] In the jurisdiction/disposition report, the caseworker expressed the belief that appellant suffered from depression.

[5] Appellant presented additional evidence at that hearing, including a January 2007 letter from her therapy program. The therapist's letter stated appellant had completed a parenting class and 11 sessions of individual therapy during which she was engaged in resolving trauma from childhood posttraumatic stress disorder, she was being drug tested regularly, she was in a Narcotics Anonymous program and she had decided to become "diligent" and

## C. *Petition for Modification and Supplemental Report*

The day of the July 18 hearing, appellant filed a section 388 petition.[6] The petition stated that she was in compliance with the court's prior orders and sought "return [of the] children to [her] by reinstating family reunification."[7]

On receipt of the petitions, the court issued an order on Judicial Council form JV-180.[8] On the form, the court checked three boxes. The first checked box, under No. 13, stated: "The best interest of the child may be promoted by the requested new order, and either (a) the request states a change of circumstances or new evidence, or (b) the request has been filed for the purpose of asserting a brother or a sister relationship with the child. A hearing shall be held on the request as follows . . . ." The second checked box, No. 13(a), stated: "The matter is set for a hearing on (*date*): 9/11/07 at (*time*): 8:30 a.m. in Dept. 402." The third checked box, No. 13(b), stated: "The judge will not hold a hearing. The judge will make a decision based on your request and any other papers filed by those listed in item 8. You and anyone listed in item 8 may ask for a hearing, which the judge will hold if there is good cause."[9] The clerk subsequently sent appellant a notice, stating: "The petition filed under Section 388 of the Welfare and Institutions Code was submitted to a Hearing Officer of the Juvenile Court and was ordered set for hearing. The date set for hearing is 09-11-07 at 8:30 A.M. in Department 402 . . . ."[10]

---

"pro-active" when "she realized she could lose her children to adoption." The letter recommended that appellant be permitted unmonitored visits with the children. A separate letter from the National Council on Alcoholism and Drug Dependence stated that in January 2007, appellant had completed a three-month drug education and prevention program. In issuing its ruling terminating services, the court stated that it appeared appellant had complied with the case plan "with the exception of . . . completing the [drug] testing requirements" and that she was "beginning to deal with some of the issues that have driven her life," but that it was clear "neither parent is ready to have the children returned to their physical care and custody."

[6] On July 17, Martin also filed a section 388 petition. His petition is not pertinent to this appeal.

[7] Attached to appellant's petition was a letter written by her therapist stating that "[i]n the beginning of therapy [appellant] was angry[,] self destructive and seemed to take therapy as penitence," but that she had changed. The letter further stated: "[S]he is not finished with therapy but she is heading in the right direction. She is no longer using drugs. She is no longer drinking and going out at night concerned she has a man. She has a job and is well respected by her employer. She is living with her sister (the sister that turned her in to social services). Generally she is making better choices about her life." The therapist recommended that appellant be given increased visitation with the children, "perhaps even overnight visits."

[8] A copy of the form is attached as Appendix A to this opinion.

[9] Item 8 listed all those with a potential interest in the case, including the child, the child's attorney, the parents, the legal guardian, the foster parents, etc.

[10] A copy of the notice sent to appellant is attached as Appendix B to this opinion.

On July 18, 2007, the parties and their counsel appeared for the scheduled section 366.26 hearing. The court continued the section 366.26 hearing to September 11, stating: "Both mother and father have filed 388 petitions that have not been thoroughly . . . reviewed by the court. [¶] Those petitions have just been provided to County Counsel and the court will need to go over the 388 petitions and reset the matter for contested [366].26 and the court may set the 388 as well for hearing." The court ordered DCFS to address the section 388 petitions by "observ[ing] the parents while they are visiting and provide a report . . . addressing their observation, the quality and nature of the visits and the relationship between the children and the parents."

On September 11, 2007, DCFS filed a "Supplemental Report re: [appellant's] 388 Petition." The report described four visits between appellant and the children between July 25 and August 29, all observed by the caseworker.

In connection with the supplemental report, the caseworker interviewed appellant, Maria, the two older children, and appellant's therapist. Appellant told the caseworker she had obtained stable housing and employment and purchased a van for transportation. She asked for another opportunity to get her children back and for increased visitation. Maria told the caseworker she preferred adoption to guardianship because she had family and property in Mexico and wanted to be able to travel there freely with the children. Lesly and Jennifer both said they wanted to stay with Maria. The therapist reiterated that appellant had been doing well since the date "she was served with the .26 notices" and continued to recommend that appellant be allowed to have more visitation "in order to get to know the children and be part of [their] lives."

The caseworker concluded that appellant was not ready to care for the children full time, but recommended that appellant be allowed more visitation. As to the permanent plan, the report stated: "[DCFS] [is] not opposed to Legal Guardianship with grandparents, however, due to [Isaac], [Josue,] and Martin[, Jr.]'s tender age, [DCFS] policy is that Adoption is the most suitable permanent plan for the children."

D. *September 2007 Proceeding*[11]

On September 11, 2007, the parties and their counsel appeared before the court. Counsel for DCFS began by stating: "I plan to enter all documents . . .

---

[11] The final proceeding in this matter began on September 11, 2007, and concluded on September 13.

to address the contested [366.26] issue and 388. I understand we will hear both evidence [*sic*], simultaneously." The court replied that appellant's section 388 petition "has been denied at this time."[12] Appellant's counsel stated: "That's over her objection" and the court stated that her objection was "noted." A few minutes later, before addressing the court on the issues pertaining to termination of parental rights under section 366.26, counsel for appellant stated: "For the record to be clear, the 388 that [appellant] filed in this matter and that has been denied today, that is over her objection."

The section 366.26 hearing went forward. Appellant testified she had been the primary caregiver for the children prior to detention and the children still called her "mommy." She visited the children weekly and had phoned them every night before the reunification period ended. She had attended school conferences for Lesly and Jennifer and Lesly's graduation, and would have attended more school events had Maria given her the necessary information.

Maria testified that the older children had stayed with her for extended periods even prior to DCFS intervention due to appellant's neglect. All the children called her "mommy" or "mama" and her husband "dad" or "pappy." She denied ever preventing or prohibiting appellant from visiting the children or failing to inform the parents about school events. Maria had no objection to the parents continuing to visit the children after the adoption as long as they behaved appropriately. However, she and her husband were considering moving to Mexico permanently.

During closing argument, DCFS and the children's attorney asked the court to terminate parental rights and order adoption as the permanent plan. Appellant and Martin asked that the order be one for legal guardianship, rather than adoption.

The court found by clear and convincing evidence that the children were adoptable and that adoption was the appropriate plan. The court specifically found that neither parent had progressed to the point that the children could be returned. The court further found that the parents "do not have a significant parental role in the lives of their children" and had not demonstrated "it would be harmful or detrimental to the children . . . if [the

---

[12] In its written order denying the section 388 petition, the court stated: "The [section] 388 Petition is denied. The best interest of the child(ren) would not be promoted by [the] proposed change of order."

parental] relationship were severed . . . ." Appellant noticed an appeal from the denial of her section 388 petition and termination of her parental rights.

## DISCUSSION

### A. *The Court's Order Denying Appellant's Section 388 Petition Must Be Reversed for Failure to Hold the Required Hearing.*

■ Appellant contends the juvenile court violated procedural due process when it failed to hold a hearing on her section 388 petition after ruling that "[t]he best interest of the child may be promoted by the requested new order" and the petition "state[d] a change of circumstances or new evidence," and notifying her that a hearing would take place. We agree.

■ Section 388 permits "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court" to petition "for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court" on grounds of "change of circumstance or new evidence." (§ 388, subd. (a).) "If it appears that the best interests of the child may be promoted by the proposed change of order, . . . the court shall order that a hearing be held and shall give prior notice . . . ." (*Id.*, subd. (c).) Section 388 thus gives the court two choices: (1) summarily deny the petition or (2) hold a hearing. (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 431 [100 Cal.Rptr.2d 811]; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413 [5 Cal.Rptr.2d 148].) In order to avoid summary denial, the petitioner must make a "prima facie" showing of "facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593 [50 Cal.Rptr.2d 745]; accord, *In re Marilyn H.* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) "[I]f the petition fails to state a change of circumstances or new evidence that might require a change of order, the court may deny the application ex parte. [Citation.]" (*In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450 [63 Cal.Rptr.2d 513].) On the other hand, "if the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing." (*In re Heather P.* (1989) 209 Cal.App.3d 886, 891 [257 Cal.Rptr. 545].)[13]

---

[13] Consistent with the statute, rule 5.570(f) of the California Rules of Court, entitled "Hearing on petition," provides: "If all parties stipulate to the requested modification, the court may order modification without a hearing. If it appears to the court that the requested modification will be contested or if the court desires to receive further evidence on the issue, the court *must* order that a hearing on the petition for modification be held within 30 calendar days after the petition is filed." (Italics added.)

Respondent does not contend the court summarily denied appellant's section 388 petition. Nor could it. The juvenile court checked the box under item 13 on the form order, stating "[t]he best interest of the child may be promoted by the requested new order, and . . . the request states a change of circumstances or new evidence." This is the precise language of section 388 that triggers the grant of a hearing. Notably, the court did not check any of the boxes under item 14, indicating the request had been summarily denied. (See *In re Jeremy W., supra,* 3 Cal.App.4th at p. 1413 [juvenile court signified that § 388 petition had been summarily denied by checking box on form order which stated: " 'It appears to the court that the best interests of the minor(s) will not be promoted by the proposed change of order.' "].) Further, the court ordered DCFS to prepare a supplemental report responsive to the petition. There would have been no need for a response from DCFS had the court concluded appellant's petition was inadequate on its face. We thus turn to whether appellant was provided the "hearing" contemplated by section 388, which the court must hold "[i]f it appears that the best interests of the child may be promoted by the proposed change of order . . . ." (§ 388, subd. (c).)

 Rule 5.570(h) of the California Rules of Court governs the conduct of hearings on section 388 petitions. It requires that a section 388 petition hearing be conducted in the same manner as a dispositional hearing if "(A) The request is for removal from the home of the parent or guardian or to a more restrictive level of placement; or (B) There is a due process right to confront and cross-examine witnesses." Otherwise, "proof may be by declaration and other documentary evidence, or by testimony, or both, at the discretion of the court." Respondent contends the court exercised its discretion to limit evidence to declarations and other documentary evidence and that "it was made clear to mother that she was required to request a hearing."

We disagree. First, the court's order was anything but clear. Indeed, the court checked boxes corresponding to two inconsistent statements—"[t]he matter is set for a hearing" and "[t]he judge will not hold a hearing"—rendering its order incoherent. Second, as appellant notes, she received a written notice from the court, stating unequivocally that "[t]he petition filed under Section 388" had been "ordered set for hearing" on September 11, 2007. She thus had every reason to believe a hearing would be held on her petition.[14]

---

[14] That both parties anticipated a hearing on appellant's section 388 petition is confirmed by the conduct of counsel for DCFS, who began her September 11 presentation by stating that she "plan[ned] to enter all documents . . . to address the contested [366.26] issue and 388" and "underst[oo]d" the court would hear "both . . . simultaneously."

█ More important, and contrary to respondent's suggestion, nothing in California Rules of Court, rule 5.570 permits the court to dispense with a hearing altogether or to require that a petitioner expressly request a hearing, once a prima facie showing has been made. Section 388, subdivision (c) states "the court *shall order* that a hearing be held . . ." (italics added) where the petitioner has made a prima facie showing; rule 5.570(h) governs the "conduct" of such hearing. (See Rule 5.570(h) ["Conduct of Hearing (§ 388)"].) Neither the statute nor the rule suggests a hearing is optional.

Recently, the Fourth District described the Judicial Council form at issue, JV-180, as "internally inconsistent and ambiguous on the issue of whether a hearing is being held," and recommended that "JV-180 be reformed." (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1080, 1082 [69 Cal.Rptr.3d 197].) To us, the form appears not only internally inconsistent but legally infirm. Respondent has cited no authority—and we are aware of none—that would permit a court, after finding that a petitioner's section 388 petition had made a prima facie showing, to require the petitioner to request the hearing guaranteed by statute.

█ With respect to the conduct of the hearing, it has long been held that juvenile proceedings need not be "conducted with all the strict formality of a criminal proceeding." (*In re Jones* (1939) 34 Cal.App.2d 77, 82 [93 P.2d 185]; accord, *In re Corey A.* (1991) 227 Cal.App.3d 339, 346 [277 Cal.Rptr. 782].) As this court has said, "[d]ue process is a flexible concept which depends upon the circumstances and a balancing of various factors. [Citation.]" (*In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817 [80 Cal.Rptr.2d 534]; accord, *In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1129 [41 Cal.Rptr.3d 909] (*Vanessa M.*), quoting *In re Matthew P.* (1999) 71 Cal.App.4th 841, 850–851 [84 Cal.Rptr.2d 269], quoting *In re Malinda S.* (1990) 51 Cal.3d 368, 383 [272 Cal.Rptr. 787, 795 P.2d 1244] [" 'Procedural due process is not absolute. "[O]nce it has been concluded that a due process right exists, we balance . . . factors . . . to decide what process is due. [Citation.]" ' "].)

One specific area of dependency jurisprudence where the rules of evidence are relaxed is with respect to the reports and social studies prepared by the caseworker assigned to the family. The reports and studies contain not only the observations and recommendations of the caseworker, but also hearsay statements from family members and other witnesses. Despite their hearsay content, such reports are admissible to assist the court in its determinations. (*In re Corey A., supra,* 227 Cal.App.3d at pp. 346–347; *In re Jeanette V.,*

*supra,* 68 Cal.App.4th at p. 816.) Due process generally requires, however, that parents be given the right to present evidence, and to cross-examine adversarial witnesses, such as the caseworker and persons whose hearsay statements are contained in the reports, "i.e., the right to be heard in a meaningful manner." (*In re James Q.* (2000) 81 Cal.App.4th 255, 265 [96 Cal.Rptr.2d 595]; accord, *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 758–759 [89 Cal.Rptr.2d 407] [juvenile court's right to control its proceedings did not permit it to deny parent's request for contested 18-month review hearing and opportunity "to actually present evidence and to cross-examine the government's witnesses"]; see *In re Thomas R.* (2006) 145 Cal.App.4th 726, 733–734 [51 Cal.Rptr.3d 864]; but see *In re Lucero L.* (2000) 22 Cal.4th 1227, 1242–1243 [96 Cal.Rptr.2d 56, 998 P.2d 1019] [report containing hearsay statement of young child admissible even though child was incompetent to testify or be cross-examined].)

The decision in *In re C.J.W., supra,* 157 Cal.App.4th 1075 is instructive. There, the court was faced with a similar issue: whether to uphold denial of petitions for modification where the juvenile court's preliminary order, based on the same judicial council form used here, was internally inconsistent, and the court denied the petitions without hearing testimony. On the record presented, the appellate court found the juvenile court "did conduct a hearing" even though it "did not allow testimony from the parents on the section 388 petitions" because it *"receive[d] written evidence and heard substantial argument from counsel for the parties."* (*In re C.J.W., supra,* at pp. 1080–1081, italics added.) The parents' counsel "concurred with this manner of proceeding and did not object." (*Id.* at p. 1081.) Accordingly, the court concluded, the hearing conducted "comported with due process." (*Ibid.*)

The same cannot be said here. The court neither took testimony nor received documentary evidence, and it denied the petition without affording counsel an opportunity to argue the merits of the petition. In short, it provided no hearing whatsoever. On this record, we cannot conclude, as the court did in *In re C.J.W.,* that the lower court's procedures comported with due process or with the statutory mandate of section 388.

B. *The Court's Section 366.26 Order Must Also Be Reversed.*

■ In *In re Hashem H.* (1996) 45 Cal.App.4th 1791 [53 Cal.Rptr.2d 294] (*Hashem H.*), this court examined the consequence of failing to afford due process to a section 388 petitioner. There, we determined the juvenile court

erred in summarily denying a mother's section 388 petitions, because the petitions "made out a prima facie case of changed circumstances." (*Hashem H., supra*, at p. 1799.) DCFS contended the error was harmless, because petitioner's therapist's testimony concerning her progress " 'was admitted as evidence in the [section] 366.26 hearing and thus was available for the judicial officer's consideration in selecting and implementing a permanent plan . . . .' " (*Hashem H., supra*, at p. 1800.) We concluded this procedure "was not an adequate substitute for a hearing on [petitioner's] section 388 petitions" because, at a section 366.26 hearing, the focus changes from potential reunification to permanency. (*Hashem H., supra*, at p. 1801.) Accordingly, we held "[t]he court must first afford [petitioner] a fair hearing on her alleged change of circumstances before proceeding to the section 366.26 hearing and disposition." (*Ibid.*)

Similarly here, because we reverse the order denying appellant's petition for failure to comport with due process, we must also reverse the order under section 366.26 terminating parental rights and selecting adoption as the permanent plan. (*Hashem H., supra*, 45 Cal.App.4th at p. 1801; see also *In re Jeremy W., supra*, 3 Cal.App.4th at p. 1416 ["In the chronology of these events, a fair hearing on the section 388 petition was a procedural predicate to proceeding to the section 366.26 hearing . . ."].) As in *Hashem H.*, "[i]t is with reluctance that we reverse the orders . . . , for each delay in reaching a permanent plan 'can be a lifetime to a young child.' " (45 Cal.App.4th at p. 1801, quoting *In re Marilyn H., supra*, 5 Cal.4th at p. 310.) Nevertheless, where the petitioner presented a prima facie case of changed circumstances sufficient to trigger her entitlement to a section 388 hearing, we cannot presume that a hearing would have been fruitless. (See *Vanessa M., supra*, 138 Cal.App.4th at pp. 1132–1133 [error in excluding father's testimony not harmless beyond a reasonable doubt because "it would be entirely speculative [for appellate court] to decide that additional testimony from Father would not have been useful to the court in resolving the credibility disputes present"]; *Mediterranean Construction Co. v. State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257, 267–268 [77 Cal.Rptr.2d 781] [court would not presume trial court's refusal to allow oral argument on summary judgment was harmless error where facts were not clear]; *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803] [denial of a party's right to testify or to offer evidence is reversible per se].)

## DISPOSITION

The orders are reversed and the matter remanded to afford petitioner a hearing on her section 388 petition before proceeding to the section 366.26 hearing.

Epstein, P. J., and Willhite, J., concurred.

# APPENDIX A

0692

Your name: _____ Olga _____ | Case Number: CK59453

**Court Order**

*Court will fill out section below.*

## The Court Finds and Orders:

(12) ☐ All parties and attorneys agree to the request. The request to change a court order is granted
 a. ☐ as requested in item 6.
 b. ☐ as follows *(state specific modifications)*: _____

(13) ☒ The best interest of the child may be promoted by the requested new order, and either (a) the request states a change of circumstances or new evidence, or (b) the request has been filed for the purpose of asserting a brother or a sister relationship with the child. A hearing shall be held on the request as follows:
 a. ☒ The matter is set for a hearing on *(date)*: ___ 8-27/u 64 ___ at *(time)*: ___ 8:30 ___ a.m./p.m. at Dept. ___ 402 ___ .
 b. ☒ The judge will not hold a hearing. The judge will make a decision based on your request and any other papers filed by those listed in item 8. You and anyone listed in item 8 may ask for a hearing, which the judge will hold if there is good cause.

(14) The request is denied because:
 a. ☐ The request is not signed.
 b. ☐ The facts do not support what is requested.
 c. ☐ The request does not state new evidence or a change of circumstances.
 d. ☐ The request does not show that it will be in the best interest of the child to change the order.
 e. ☐ Other *(state specific reasons)*: _____

Date: 7-18-07

_____
Judge (or Judicial Officer)

## APPENDIX B

0688

**JOHN A. CLARKE**
EXECUTIVE OFFICER / CLERK

Eastman Children's Court
201 Centre Plaza Drive, Suite 2700
Monterey Park, CA 91754-2158

**Superior Court of California**
**County of Los Angeles**

Date: AUGUST 03, 2007

In re: 388 Petition Filed: JULY 17, 2007
Minor(s) Name: LESLY O ET. AL., MINORS
Case Number: CK54053

Dear Parent or Guardian:

The petition filed under Section 388 of the Welfare and Institutions Code was submitted to a Hearing Officer of the Juvenile Court and was ordered set for hearing. The date set for hearing is ___09-31-07___ at ___8:30 A.M.___ in Department 402 at Children's Court located at 201 Centre Plaza Drive, Monterey Park, CA. 91754-2158.

A copy of this letter is sent via U.S. Mail to the petitioner and Minor(s) attorney on this date.

JOHN A. CLARKE
Executive Officer/Clerk of the Superior Court

By _____
S. RODRIGUEZ, Deputy
Juvenile Dependency Court Operations