[No. E051886. Fourth Dist., Div. Two. June 28, 2011.]

In re E.S. et al., Persons Coming Under the Juvenile Court Law.
SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,
Plaintiff and Respondent, v.
K.S., Defendant and Respondent;
A.S., Appellant.

**COUNSEL**

Nicole Williams, under appointment by the Court of Appeal, for Appellant.

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**RAMIREZ, P. J.**—A.S. (the minor), the oldest of three children who became dependents of the juvenile court, was originally placed with his siblings but was later placed in a group home due to behavior problems. At the 12-month review stage of the proceedings, the foster parents of the minor's two younger siblings expressed a desire to adopt them, and the social worker for the San Bernardino County Department of Children and Family Services (CFS) recommended a permanent plan of adoption for these two siblings. The minor, the nonadoptive sibling, filed a petition pursuant to Welfare and Institutions Code[1] section 388 seeking reunification with his siblings, or, in the alternative, an order to preclude adoption of the younger siblings. The trial court denied the petition and the minor appeals, claiming the trial court abused its discretion in denying the petition, and violated his due process rights by not permitting live testimony at the hearing. We affirm.

## BACKGROUND

In February 2009, the minor A.S., then 10 years old, and his two younger siblings, T.S. (then age three) and E.S. (then age 11 months), came to the attention of CFS when their mother (mother) was transported to the emergency room of a hospital by ambulance with no one to care for the children. Mother had a history of mental illness, including a suicide attempt. Mother also admitted she had a long history of using controlled substances.

A dependency petition was filed on February 18, 2009, alleging the three children were at substantial risk of harm due to mother's failure or inability to supervise or protect them, by mother's inability to provide regular care due to mental illness and substance abuse (§ 300, subd. (b)), by the alleged father's inability to parent due to substance abuse (§ 300, subd. (b)), and by the lack of provision for the children's support by their respective fathers[2] (§ 300, subd. (g)).

Reports submitted prior to the jurisdiction/disposition hearing noted that the children's attorney had contacted the social worker regarding possible separation of the children due to the minor's behavior. However, the social worker did not believe removal of the minor was necessary, and felt that separation of the minor from his three-year-old sibling T.S. would not be in

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] The clerk's transcript does not include the petition or clerk's minutes relating to the minor who is the appellant here; it includes only those pertaining to the adoptive siblings. However, the detention reports and all reports submitted thereafter refer to all three children as subjects of the dependency.

their best interests due to the sibling bond. The social worker also commented that due to limited contact with mother or other family members, the children's only stability was each other. On April 28, 2009, mother submitted on the reports as to jurisdiction and disposition, and the children were declared dependents. Mother was ordered to participate in family reunification services and was granted weekly visitation.

During the reunification period, mother visited regularly during the first six months, but visits became less consistent during the second six-month period and she did not regularly participate in court-ordered reunification services. In the first six-month review report, the social worker observed the minor was very "parentified" and tended to his brothers' needs, even directing mother when she was unable to console them. However, the report went on to note that the minor resented this role and directed his resentment at his younger brothers.

During the second six-month review period, the minor was removed from his foster home placement and was placed in a group home due to significant behavioral and anger control problems. He destroyed property in the foster parent's home, including three televisions, a refrigerator, and a microwave oven, among other behaviors (including, but not limited to, urinating in a closet, and "busting" holes in walls), and directed anger at his younger siblings. The foster parent was interested in adopting the two younger brothers. The social worker recommended that parental rights be terminated as to the younger children to free them for adoption.

Prior to the 12-month review hearing, the minor filed a request to change court order (Judicial Council form JV-180), seeking an order reuniting him with his siblings. In the alternative, the minor requested that the court not terminate parental rights as to his siblings as that would make it difficult for him to continue his relationship with them. In support of the requested change, the minor's trial counsel referred to a passage from the social worker's report describing him as very parentified. Counsel's declaration concluded that because of the minor's unique role, "it is contended that [T.S.] and [E.S.] are closely bonded to [the minor] as [the minor] is bonded to them." On May 10, 2010, the court ordered a nonevidentiary hearing on the request.

At the contested 12-month review hearing, the court terminated mother's reunification services, and referred the matter for a hearing to select and implement an appropriate permanent plan, which was not limited to guardianship or a planned permanent living arrangement. The court did not rule on the

JV-180 request to change court order. However, in an interim review report and adoption assessment, CFS recommended that parental rights be terminated as to the younger siblings, and that a permanent plan of adoption be implemented as to the younger siblings. Regarding the sibling relationship, the interim report noted that the prospective adoptive mother was committed to ensuring the adoptive siblings have appropriate interaction and a positive sibling relationship with the minor.

On August 31, 2010, the minor filed a second request to change court order (JV-180), identical to the previous petition. On September 3, 2010, the court again ordered a nonevidentiary hearing. In its response to the JV-180 request, CFS reported that the minor was physically aggressive towards his younger brothers and there were significant concerns that the minor had had inappropriate sexual contact with one of his younger siblings. The report reiterated that the prospective adoptive mother was committed to maintaining the younger boys' relationship with the minor, and she planned to continue having supervised visits with both mother and with the minor.

On September 24, 2010, the court heard the section 388 petition. The minor's counsel requested to set the matter as contested, in order to cross-examine the social worker and present testimony from the minor, but the court denied that request. After considering argument by counsel and the documents submitted by the parties, the court denied the request to change court order. The minor appealed.

## DISCUSSION

### a. The Juvenile Court Did Not Abuse Its Discretion in Denying Minor's Section 388 Petition

The minor argues that the juvenile court abused its discretion in denying his petition. He asserts the trial court improperly required the minor to prove the existence of a sibling relationship that would meet the criteria to defeat a termination of parental rights pursuant to section 366.26, subdivision (c)(1)(B)(v), and that it incorrectly denied the section 388 petition because it had not heard that the minor's siblings were significantly bonded to the minor. We review such rulings for abuse of discretion and may not disturb the decision of the trial court unless that court has exceeded the limits of judicial discretion by making an arbitrary, capricious, or patently absurd determination. (*In re Aaron R.* (2005) 130 Cal.App.4th 697, 705 [29 Cal.Rptr.3d 921].) We find no prejudicial error.

■ Section 388, subdivision (b), permits any person, including a child who is a dependent of the juvenile court, to petition the court to assert a relationship as a sibling, request visitation with the dependent child, request placement with or near the dependent child, or request consideration when determining or implementing a case plan or permanent plan for the dependent child, or make any other request for an order which may be shown to be in the best interest of the dependent child. Section 388, subdivision (d), permits any person, including a dependent child, to be heard on the issue of determining a case plan or a permanent plan for a dependent child.

Before examining the court's exercise of discretion, we must first interpret the statutory language of the 2000 amendment to section 388 (Stats. 2000, ch. 909, p. 6640), which added subdivision (b), permitting a sibling to file a petition pursuant to section 388 to assert a relationship as a sibling to a dependent child. The bill was intended to further improve the treatment of and provide greater protections for sibling groups in the juvenile dependency system. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1987 (1999–2000 Reg. Sess.) as amended Aug. 24, 2000, p. 2.) The arguments in favor of the amendment pointed out that " '[s]ibling bonds and mutual support can be one of the most important linkages to a young person entering the juvenile dependency system,' " and the bill's author stated, " '[F]oster children have very few people who remain constant in their lives, and a brother or a sister may be the only person a child can turn to for support.' " (*Id.* at p. 6.)

■ To determine whether the minor made an adequate prima facie showing, we must determine whether the minor was required to show that the proposed order or request would be in the best interests of his adoptive siblings, or whether he was merely required to assert he had a bond with them. The language of section 388, subdivision (b) uses the term "dependent child" in two ways: it is used to refer to any person, including a dependent child, as a person who may file a petition under section 388, and it is used to refer to the person or persons with whom the petitioning party seeks to assert a relationship. We must interpret the statutory language to address this issue.

■ A fundamental rule of statutory construction is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876].) We are required to consider the statutory language in the context of the

entire statute and the statutory scheme of which it is a part. (*Ibid.*) Further, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Ibid.*, citing *Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].) The rules of construction also require us to consider the "last antecedent" rule, which provides that qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote. (See *Renee J.*, at p. 743; see also *Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 726 [118 Cal.Rptr.3d 123], citing *White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191].)

Subdivision (b) of section 388 refers to a person who petitions the court "to assert a relationship . . . to a child who is, or is the subject of a petition for adjudication as, a dependent of the juvenile court, and may request visitation with the dependent child, placement with or near the dependent child, or consideration when determining or implementing a case plan or permanent plan for the dependent child or make any other request for an order which may be shown to be in the best interest of the dependent child." Under the rules of construction, the term "dependent child" must refer to the adoptive sibling or siblings with whom the petitioning party—even though he or she may be a dependent child also—seeks to assert a relationship or other relief under section 388, subdivision (b).

The term "dependent child," as it is used in reference to the party with whom a minor may petition to assert a relationship, mirrors the use of the same term in subdivision (a) of section 388. Section 388, subdivision (a), permits a parent or other person having an interest in a child who is a dependent child of the juvenile court, or the child himself or herself, to petition the court in the same action "in which the child was found to be a dependent child" for a hearing to modify a prior order. In both subdivisions, a dependent child may be a petitioner for an order respecting "a dependent child."

However, an ambiguity arises when subdivisions (a) and (b) of section 388 are read in connection with subdivision (d) of that section, where the court must order a hearing if "the best interests of *the child* may be promoted by the proposed change of order, recognition of a sibling relationship [or] termination of jurisdiction . . . ." (§ 388, subd. (d), italics added.) The phrase "the child" may refer to the person making the request under section 388, subdivision (b), as well as the adoptive siblings with whom that child seeks to assert a relationship, since a dependent child may be a petitioner under section 388. But this would lead to absurd results because every petitioning nonadoptive minor who is a dependent child would be entitled to a hearing, making

the need to show the "best interests of the child," as required by section 388, subdivision (d), in order to have the right to a hearing, surplusage.

■ We construe subdivisions (b) and (d) of section 388 to mean that a person petitioning under section 388 must demonstrate that the proposed order or request would be in the best interests of the dependent child or children *with whom the petitioning nonadoptive child desires to assert a relationship or placement,* or other relief described in section 388, subdivision (b). This interpretation gives meaning to all parts of the statute, and furthers the legislative intent of protecting sibling relationships, while recognizing that " '[n]ot all sibling relationships are strong or healthy.' " (*In re Hector A.* (2005) 125 Cal.App.4th 783, 794 [23 Cal.Rptr.3d 104], quoting Schwartz, *Siblings Torn Apart No More* (2001) 32 McGeorge L.Rev. 704, 708.)

In arguing that the juvenile court abused its discretion in denying his section 388, subdivision (b) petition, minor relies heavily on the decision in *In re Hector A., supra,* 125 Cal.App.4th 783. That case held that a request to be heard under section 388, subdivision (b) should be granted if a sibling complies with section 388, subdivision (b)(1)–(4) and demonstrates a close relationship with the minor being considered for adoption. (125 Cal.App.4th at pp. 788–789.) Addressing the requirements for the petition, the court held that the petitioning sibling need show only that there is a sufficient bond with the adoptive child and that the best interests of *that* child require full consideration of the impact of interfering with that relationship before a decision is reached on the permanency plan. (*Hector A.,* at p. 793, italics added.)

In *Hector A.,* there was undisputed evidence of a significant sibling bond between all the siblings, and that the proposed adoptions of the younger siblings would have a negative impact on those relationships. (*In re Hector A., supra,* 125 Cal.App.4th at p. 798.) Nevertheless, the First District Court of Appeal concluded that any error in denying the petition was not prejudicial because the record in that case showed the juvenile court fully considered the ramifications of the sibling relationship.

■ Here, the petition contended that the minor was bonded to his younger siblings and adoption would have a negative impact on his relationship, but there was no showing that his younger siblings were bonded to him in a similar manner, nor any evidence that the proposed order would be in their best interests. The first six-month report noted that the youngest sibling was bonded to the minor, but there was no evidence beyond that point to show that either of the younger siblings was as bonded to the minor as he was to them. Given the minor's history of pushing his three-year-old sibling down the stairs and engaging in inappropriate sexual contact with that sibling,

as well as reports that the minor directed anger and resentment at his younger siblings, we cannot assume that the adoptive siblings had a positive sibling relationship with the minor or that the bond was reciprocal.

Thus, the minor did not show that the requested order was in his siblings' best interest. (§ 388, subd. (b); *In re Hector A., supra,* 125 Cal.App.4th at p. 793.) It was not an abuse of discretion to deny the petition.[3]

> b. *The Minor Did Not Have a Due Process Right to Call Witnesses at the Section 388 Hearing*

The minor argues that his request to testify at the hearing and to cross-examine the social worker at the hearing on his petition violated his due process rights, relying on rule 5.570 of the California Rules of Court. Because the minor has cited no authority holding that a nonadoptive sibling has a due process right to confront and cross-examine witnesses at a hearing on a section 388 petition, we disagree.

California Rules of Court, rule 5.570(h) governs the conduct of hearings on petitions for modification pursuant to section 388. Paragraph (2) of rule 5.570(h) provides that the hearing must be conducted as a disposition hearing under California Rules of Court, rules 5.690 and 5.695 *if*: (A) the request is for removal from the home of the parent or guardian or to a more restrictive level of placement; (B) the request is for termination of court-ordered reunification services; or (C) there is a due process right to confront and cross-examine witnesses. The paragraph goes on to say, "Otherwise, proof may be by declaration and other documentary evidence, or by testimony, or both, at the discretion of the court." (Cal. Rules of Court, rule 5.570(h)(2).)

In determining whether to order a hearing on a section 388 petition, "[i]f it appears that the best interests of the child may be promoted by the proposed change of order, recognition of a sibling relationship, termination of jurisdiction, or clear and convincing evidence supports revocation or termination of court-ordered reunification services, the court shall order that a hearing be held . . . ." (§ 388, subd. (d).) Thus, the minor's right to a hearing required a showing that the requested relief was in the best interest of those dependent siblings, just as a parent seeking modification of a prior order must show that the proposed order is in the best interests of the child.

Here, the minor did not make a showing that the proposed order would benefit those siblings, thereby failing to make the necessary showing

---

[3] We note, however, that our conclusion does not preclude the juvenile court from considering the sibling relationship at the selection and implementation hearing because mother can present the minor's testimony in support of the exception.

to trigger the right to an evidentiary hearing. (See *In re Hector A., supra,* 125 Cal.App.4th at p. 792.) The minor was not entitled to an evidentiary hearing as a matter of right, although the court, in exercising its discretion, did set the matter for a nonevidentiary hearing first in May 2010, upon the filing of the initial section 388 petition, and again in September 2010, upon the refiling of the petition. Nevertheless, we recognize that section 388 petitions are liberally construed in favor of granting a hearing to consider the request. (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413–1414 [5 Cal.Rptr.2d 148].) But the right to a hearing does not necessarily entitle the petitioning party to a full evidentiary hearing. It is well recognized that due process is a flexible concept which depends upon the circumstances and a balancing of various facts. (*In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817 [80 Cal.Rptr.2d 534].) Due process requires a balance. (*Ibid.,* citing *In re Sade C.* (1996) 13 Cal.4th 952, 992 [55 Cal.Rptr.2d 771, 920 P.2d 716].)

█ Even where due process rights are triggered, it must be determined "what process is due." (*In re Malinda S.* (1990) 51 Cal.3d 368, 383 [272 Cal.Rptr. 787, 795 P.2d 1244]; see *In re Lesly G.* (2008) 162 Cal.App.4th 904, 914 [76 Cal.Rptr.3d 361].) A party in dependency proceedings who has a due process right to a meaningful hearing with a right to present evidence does not necessarily enjoy full rights to confrontation and cross-examination. (*Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1146 [78 Cal.Rptr.2d 488].) Due process is not synonymous with full-fledged cross-examination rights. (*In re Jeanette V., supra,* 68 Cal.App.4th at p. 817.) Therefore, it did not violate the minor's due process rights to base the decision on the section 388 petition on the basis of information provided in the petition, documentary evidence, and argument by counsel. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1080–1081 [69 Cal.Rptr.3d 197] [Fourth Dist., Div. Two].)

Although we are sympathetic to the minor's strong desire to retain the familial ties to siblings, we are also aware that our holding does not prevent the juvenile court from considering the effect the younger siblings' adoption may have on the relationship they have with the minor in determining whether termination of parental rights would be detrimental. At a selection and implementation hearing, the parent has standing to assert the sibling relationship as an exception to adoptability and may offer the minor's testimony on that issue. (*In re Hector A., supra,* 125 Cal.App.4th at p. 791, citing *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 950 [124 Cal.Rptr.2d 688]; see also *In re Valerie A.* (2007) 152 Cal.App.4th 987, 999 [61 Cal.Rptr.3d 403].)

## DISPOSITION

The judgment is affirmed.

Hollenhorst, J., and Miller, J., concurred.

A petition for a rehearing was denied July 20, 2011, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 12, 2011, S195292.